Estate of J. T. Longino, Deceased, Robert Harvey Longino and John Thomas Longino, Jr., Former Executors, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

R. H. Longino, Margaret W. Longino (Husband and Wife), Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 70617, 70618.    Filed July 17, 1959.

*J. L. Roberson, Esq.*, for the petitioners.
*George L. Hudspeth, Esq.*, for the respondent.

Mulroney, *Judge:* The respondent determined deficiencies in the income tax of petitioners for the year 1952 in these consolidated proceedings in the following amounts:

| Docket No. | Deficiency |
| --- | --- |
| 70617 | $1,096.03 |
| 70618 | 2,063.52 |

The one issue to be decided is whether $18,740.54, received from the settlement of a claim for damages to cotton crops, is to be considered as ordinary income or as long-term capital gain.

### FINDINGS OF FACT.

Some of the facts are stipulated and they are found accordingly. R. H. Longino and Margaret W. Longino are husband and wife. During the years 1951 and 1952 they were partners with J. T. Longino (R. H. Longino's father) in the operation of a cotton plantation near Lula, Mississippi.

In connection with the production of the cotton crop for 1951 the partnership purchased and used an insecticide called UNICO 25% DD7 Emulsion Concentrate. This was a product of United Cooperatives, Inc. of Alliance, Ohio, hereinafter called United, which did not sell directly to farmers but distributed its products through local agencies, sales companies, farmers' cooperatives, and brokerage companies. As a result of the usage of the insecticide considerable damage was done to the cotton crop being grown on the plantation in 1951. Subsequently, R. H. Longino, the managing partner, made claim for the partnership against United and others for damages caused to the said cotton crop by the use of the insecticide. The United States Fidelity & Guaranty Company of Baltimore, Maryland, was the insurance carrier for United, having issued it a products liability policy.

After considerable negotiations between all parties concerned the claim for damages was settled by R. H. Longino on March 18, 1952,

for himself and the partnership executing an instrument, assigning the claim for damages to United, and receiving a check from United States Fidelity & Guaranty Company in the sum of $21,087.60. This included $237.60 refund for returned insecticide and $20,850 damages.

The partnership, in its return for 1952, reported the $20,850 damages as long-term capital gain from which was deducted $2,109.46 attorney fees, leaving a reported net long-term capital gain of $18,740.54. The three equal partners in turn reported their respective shares of this sum as long-term capital gain in their own tax returns (R. H. and Margaret filed joint return) filed with the district director of internal revenue at Jackson, Mississippi. J. T. Longino died March 6, 1955, and Robert H. Longino and John T. Longino, Jr., qualified as executors and were sole beneficiaries of his estate.

The deficiencies in controversy result from respondent's determination that the $18,740.54 received by the partnership in settlement of the claims for damage to crops is taxable as ordinary income.

### OPINION.

It is undisputed that the partnership had a claim for damages caused by the use of the insecticide on its 1951 cotton crop. The partnership was asserting this claim against United, which had placed this product on the market, and others who had had anything to do with it on its way from producer to the end sale to the partnership. The partnership was claiming around $30,000 damages but, in its settlement negotiations with United, a figure of $21,087.60 was reached which was acceptable to both. United did not manufacture the chemical and the attorney representing its insurer desired to preserve any rights it might have to go against the manufacturer of the chemical or anyone else. Because of these considerations and at the insistence of the insurance company lawyer, the settlement was handled by an assignment of the claim by the partnership to United for the agreed settlement sum of $21,087.60.

The rule that is well established by the authorities is that the taxability of an amount recovered upon a contested claim depends upon the nature of the claim and the actual basis of recovery. If the recovery represents damages for loss of profits it is taxable as ordinary income. If the recovery is received as the replacement of capital lost it is taxable as the return of capital. *Harry L. Booker*, 27 T.C. 932; *Raytheon Production Corporation*, 1 T.C. 952, affd. 144 F. 2d 110, certiorari denied 323 U.S. 779.

It is clear that the claim in the instant case was for loss of profit or as R. H. Longino said for "[d]amage to my cotton crop." In fact, R. H. Longino was asked the specific question if his claim was for a recovery for the loss of a crop which, if it had not been damaged, would have returned a profit to him, and he replied, "That is right."

Petitioners rely entirely on the form of the settlement instrument—an instrument of assignment rather than a release. Their argument on brief is that the "gain represented the proceeds of a sale and was not a settlement of a claim for damages." There is no merit in petitioners' contention. It is substance not form that controls. *Gregory* v. *Helvering*, 293 U.S. 465; *Rupe Investment Corporation*, 30 T.C. 240, affd. 266 F. 2d 624. The form of the settlement instrument was dictated by the insurer's attorney. Petitioners' attorney, who represented them in the settlement negotiations, testified, "I have always figured if they were paying for it they had a right to put it in the form they desired." The payment to the partnership was a recovery on its crop damage claim. It was made by the insurer to settle a claim for damages against its insured. The fact that the insurer insisted upon a particular form to be executed by the claimant at the time of settlement makes no difference at all for tax purposes.

*Decisions will be entered for the respondent.*